Vasilios **SFIRIDAS,** by his next friend, **Bert E. Zibelman**

v.

**SANTA CECELIA CO., S.A.** and Santa **Maria Ship Owning & Trading Co. (Bermuda) Ltd.**

**No. 129 of 1964.**

United States District Court, E. D. Pennsylvania.

April 27, 1973.

Freedman, Borowsky & Lorry, by Robert C. Daniels, Philadelphia, Pa., for plaintiff.

Rawle & Henderson, by Harrison G. Kildare, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

### I.

This is an admiralty action brought by Vasilios Sfiridas, plaintiff, against defendants to recover for injuries alleged to have been caused by the negligence of defendants and the unseaworthiness of their vessels. We do not decide, at this time, the merits of these allegations. The only issue before this Court, and the only issue we decide, is the appropriate law to be applied in this case.

Plaintiff urges this Court to apply the admiralty law of the United States.[1] Defendants, however, argue that the proper law to be applied in this case is Greek law.

For the reasons hereinafter set forth, we decide that the proper law to be applied in this case is the maritime law of Greece.

### II.

Plaintiff and defendant, Santa Cecelia Company, entered into a contract of employment sometime prior to January 26, 1964. The contract was signed in Greece and provided that all disputes between the parties would be resolved according to Greek law.

Plaintiff thereafter joined the crew of the Santa Cecelia Company's ship, the Santa Constance, while it was in harbor at Dublin, Ireland. On January 26, 1964, plaintiff was allegedly injured aboard the Santa Constance while it was enroute from Dublin to Newport News, Virginia. At the time of plaintiff's alleged injury, the Santa Constance was on the "high seas." Plaintiff was at the time of his alleged injury and is presently a citizen of Greece.

Upon his arrival at Newport News, plaintiff was hospitalized and treated for the injuries suffered aboard the Santa Constance.

Plaintiff later joined the crew of the Captain Anastasis, another vessel owned and operated by Santa Cecelia, while it was in the port of Baltimore, Maryland. Plaintiff, still complaining of his injury, left the Captain Anastasis when it arrived in the port of Philadelphia. After a brief hospitalization in Philadelphia, plaintiff was released and repatriated to Greece.

The S.S. Captain Anastasis and Santa Constance are owned and operated by and for Santa Cecelia Company. Santa Cecelia is a Panamanian corporation. It is completely owned and controlled by Greek nationals, residing in either Greece or the United Kingdom. None of the owners have had any contact with the United States, except as tourist.[2]

1. The Jones Act, 46 U.S.C. § 688, upon which plaintiff, in part, predicates this action reads in pertinent part:
"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; . . ."

2. Plaintiff vigorously opposes this conclusion. In his own words he asserts the real issue:
". . . is whether or not there has been a casual and offhand handling and interhandling of the companies

There is no American ownership interest in the Santa Cecelia company. Moreover, both the Captain Anastasis and the Santa Constance are registered under Greek law and consequently fly the "Flag of Greece." Santa Cecelia's principal place of business and its business records are maintained in Greece. It has no office in this country.

Defendant, Santa Maria Bermuda, is a Bermuda corporation with its principal place of business located in Hamilton, Bermuda. All of its stockholders, officers, or directors are British or Greek nationals, except one, P. A. Margaronis, who, at the time of plaintiff's injury was an American citizen residing in Bermuda. Santa Maria at all relevant times managed the ships, Santa Constance and Captain Anastasis, owned by Santa Cecelia Company.

It is clear that P. A. Margaronis exercised operational control of Santa Maria Bermuda; however, it is also clear that as to Santa Cecelia and its crewmembers he had no right to hire, nor did he have the right to fire officers of her ships. We also note that all the officers and crewmembers of both ships were Greek nationals, hired in Greece.

### III.

In Sfiridas v. Santa Cecelia Co. S.A., 265 F.Supp. 252 (E.D.Pa.1966), then Chief Judge Clary decided that this Court had jurisdiction over the parties and the subject matter of this case, and in the exercise of his sound discretion in this case, declined defendants' motions to dismiss this action on the grounds of forum non-conveniens. In so doing, he recognized that foreign law might be applied at the time of trial:

[Santa Maria and Santa Cecelia] at the will of this man, [P. A. Margaronis] *who has been an American citizen certainly at the time my man was injured and if there has been an attempt to insulate him from ownership interests in order to avoid obligations that these companies would have otherwise had arise to them under U. S. law, then that*

*"In the present action, it is possible that at least as to the injury at sea, Greek law may be applied. The policy in this Circuit is presently unsettled whether or not to decline jurisdiction where foreign law is applicable.* (Citations omitted.) On balance of considerations, this Court has decided to retain jurisdiction." [3] (Emphasis supplied.)

Thus, we must now decide the law to be applied in this forum.

Defendants' position is that when the tests set forth in Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), are applied, Greek law is the appropriate law to govern this case.

In *Lauritzen*, supra, plaintiff seaman was a citizen of Denmark, who joined the crew of a ship of Danish Flag and Registry, owned by a Danish citizen. Plaintiff was injured aboard ship while it was in Cuban waters. Plaintiff instituted suit, under the Jones Act in the United States District Court for New York. Faced squarely with the question of whether to apply Danish law or the Jones Act, the Supreme Court held that Danish law, and not the Jones Act would be applied. The Court then set out seven factors to be considered in determining choice of law.[4] The factors are (1) place of the wrongful act, (2) law of the flag, (3) allegiance or domicile of the injured seaman, (4) allegiance of the defendant shipowner, (5) place of the contract, (6) inaccessibility of foreign forum, and (7) the law of the forum. The Court declared that ". . . the most venerable and universal rule of maritime law . . . is that which gives cardinal importance to the law of the flag." [5]

In this case, factors (1) through (5) indicate that Greek law is the appropri-

*is exactly what we are here about."* Pre-Trial dep., P. A. Margaronis, p. 38, Doc. No. 47). (Emphasis supplied).

3. Sfiridas v. Santa Cecelia, supra, at 254.

4. Lauritzen v. Larsen, supra, at 583, 73 S.Ct. 921.

5. Id. at 584, 73 S.Ct. at 929.

ate law. Factors six and seven are not of great significance here, because Judge Clary in exercising his discretion and retaining jurisdiction in this forum advised the parties that this Court might apply the law of Greece. Clearly, under *Lauritzen,* the law of Greece would apply; however, plaintiff argues that because of the extensive and close relationship of the two defendant corporations, Santa Cecelia and Santa Bermuda, and the interrelated business activity conducted by P. A. Margaronis on behalf of both corporations, there are sufficient counterweights to warrant the application of the doctrine of "substantial contacts [6]" as defined in Hellenic Lines v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970); and in Bartholomew v. Universe Tankship, Inc., 263 F.2d 437 (2nd Cir. 1959), cert. denied, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959); both cases in our view, are easily distinguished from the instant case.

In *Rhoditis,* plaintiff seaman, a Greek citizen, was injured in American waters in 1965. Defendant was a Greek corporation, and the stock therein was owned almost wholly (95%) by a permanent resident alien of the United States. Further, the corporation's "base of operations" was in the United States, at the ports of New York and New Orleans, where plaintiff was injured.

In *Rhoditis,* the Supreme Court in an opinion by Mr. Justice Douglas decided that the factors in *Lauritzen* were not meant to be exclusive or mechanically applied. Thus, the Court held that where it can be shown that the foreign registration is more or less "nominal," " . . . [a] shipowner's base of operations is another factor of importance in determining whether the Jones Act is applicable.[7]" The underlying rationale for applying the Jones Act to the factual

situation present in *Rhoditis* was expressed by the Court with great clarity:

> "We see no reason whatsoever to give the Jones Act a strained construction so that this alien owner, engaged in an extensive business operation in this country, may have an advantage over citizens engaged in the same business by allowing him to escape the obligations and responsibility of a Jones Act "employer." The flag, the nationality of the seaman, the fact that his employment contract was Greek, and that he might be compensated there are in the totality of the circumstances of this case minor weights in the scales compared with the substantial and continuing contacts that this alien owner has with this country." [8]

The facts, holding, and rationale, of *Bartholomew* are essentially the same as those expressed in *Rhoditis,* and in our view, lend no support to plaintiff's contentions in this case. In *Bartholomew,* supra, plaintiff seaman was a resident and domiciliary of the United States. Plaintiff was injured aboard defendant's ship in American waters. Plaintiff had signed his contract of employment in the United States; this contract did not contain a choice of law clause. Defendant shipping corporation was a Liberian corporation whose stock was 100% owned by a Panamanian corporation, which in turn was nearly completely owned (95% of its stock) by an American citizen. Finally, as in *Rhoditis,* the "base of operations" for the corporation was New York City.

Clearly, the factual situations in the cases of *Rhoditis* and *Bartholomew,* are distinguishable from the facts of the instant case. Further, neither case is inconsistent or at odds with "the law of the flag" as announced in *Lauritzen.*[9]

---

6. See, also note 2, supra.

7. Hellenic Lines v. Rhoditis, supra, 398 U.S. at 309, 90 S.Ct. at 1734.

8. Hellenic Lines v. Rhoditis, supra, at 310, 90 S.Ct. at 1734.

9. See, The [M/S] Bremen et al v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

They add only additional factors to be considered in the determination of choice of law.

 In the instant case, plaintiff has attempted to show that one P. A. Margaronis, an American citizen, at the time of plaintiff's injury, was in fact one of the real owners of defendant corporation (Santa Cecelia) and thus bring this case within the scope of *Rhoditis* and *Bartholomew*. However, the evidence produced and the inferences to be drawn therefrom permit only one finding, that is, that P. A. Margaronis does not own any interest, financial or otherwise in defendant, Santa Cecelia, corporation. We may not infer that P. A. Margaronis secretly owns a share of the Santa Cecelia corporation merely from the fact that he is related to some of the disclosed owners. Plaintiff has failed to show that the record owners of the vessels in question had any contact with the United States, save as tourist; all of the owners are foreign nationals residing in countries other than the United States. We may not as plaintiff suggests decide such a critical issue, as ownership, by innuendo, gross speculation, or inferences not supported by the evidence.

Our conclusion as to choice of law, is further supported by the fact that neither Santa Maria or Santa Cecelia established a "base of operations" in this country. Although Santa Cecelia did business with firms located in this country, the contacts are not "substantial" as that term is used in *Rhoditis* and *Bartholomew*.

While it is clear that P. A. Margaronis owned a financial interest in and exercised significant control over the affairs of Santa Bermuda, the record is devoid of any clear indication that he exercised like or similar control over the crucial affairs of Santa Cecelia; major decisions concerning the management of Santa Cecelia vessels were decided by the President of that corporation.

The evidence produced, after full and extensive discovery, requires the application of the law of Greece to this controversy, and we note that is the law to which the parties by contract agreed.